IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS A. OATES, JR.,              :      CIVIL ACTION
                                   :      NO. 12-1177
          Plaintiff,              :
                                   :
     v.                            :
                                   :
WELLS FARGO BANK, N.A.,            :
                                   :
          Defendant.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              JULY 31, 2012


        Thomas A. Oates, Jr. ("Plaintiff") brings this civil

action against Wells Fargo Bank, N.A. ("Defendant"), for

violations of the Fair Credit Reporting Act ("FCRA"), the Fair

Debt Collection Practices Act ("FDCPA"), and Pennsylvania law.

Defendant removed from the Court of Common Pleas for Chester

County, Pennsylvania, and moved to dismiss Plaintiff's Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

For the reasons that follow, the Court will grant in part and

deny in part the Motion to Dismiss.


I.   **BACKGROUND**

        Because the facts of this case occur in the foreground

of a complex regulatory scheme involving a national flood

insurance program, a discussion of the facts follows an explanation of that statutory and regulatory scheme.

A.   National Flood Insurance Act of 1968 and Subsequent Amendments

Congress enacted the National Flood Insurance Act of 1968 ("NFIA") to share the risk of flood losses by establishing a national flood insurance program. See 42 U.S.C. § 4001(a) (2006). Congress amended the NFIA to require property owners assisted by federal programs or federally insured institutions to obtain flood insurance if the subject property is located in a special flood hazard area ("SFHA").[1] See Flood Disaster Protection Act of 1973 ("FDPA") § 102, 42 U.S.C. § 4012a (2006). And Congress further amended the NFIA to require lenders to notify purchasers of property, in writing, within a reasonable time before signing the purchase agreement, that the property is located in a SFHA.[2] National Flood Insurance Reform Act of 1994

_____

[1]     A SFHA is "the land in the flood plain within a community having at least a one percent chance of flooding in any given year as designated by the Director of [the Federal Emergency Management Agency]." 12 C.F.R. § 339.1(k) (2011).

[2]     Such written notification must include a warning that the property is within a SFHA, a description of the flood insurance purchase requirements under the FDPA, a statement that flood insurance coverage may be purchased under the national flood insurance program or through a private insurer, and a statement whether federal disaster relief assistance is available in the event of damage to the property caused by a flood. See 42 U.S.C. § 4104a(3) (2006); 12 C.F.R. § 339.9(b) (2011).

("Reform Act") § 527, 42 U.S.C. § 4104a(a)(1); 12 C.F.R. § 339.9(a).

If the lender determines at any time during the term of a loan that the property securing the loan is either not covered by flood insurance or is covered inadequately, the lender must notify the borrower that the borrower should obtain insurance at the borrower's expense. 42 U.S.C. § 4012a(e)(1); 12 C.F.R. § 339.7. If the borrower fails to purchase flood insurance coverage within forty-five days after the lender provides notice, the lender must purchase flood insurance on behalf of the borrower and may charge the borrower any associated costs of premiums and fees. 42 U.S.C. § 4012a(e)(2); 12 C.F.R. § 339.7. Lenders may rely on a third party to determine whether a property falls within a SFHA but "only to the extent that such person guarantees the accuracy of the information." 42 U.S.C. § 4104b(d) (2006). Finally, the borrower and lender may jointly request the Administrator of the Federal Emergency Management Agency ("Director") to review whether a property is located in a SFHA. Id. § 4012a(e)(3).

A federal agency may assess a civil penalty against a lender demonstrating a pattern or practice of failing to provide notice or purchase flood insurance coverage as required. Id. § 4012a(f)(2)(B). And the Reform Act protects lenders, in certain

3

circumstances, from liability under state law when the lender purchases flood insurance on behalf of a borrower:

> Notwithstanding any State or local law, for purposes of this subsection, any regulated lending institution that purchases flood insurance or renews a contract for flood insurance on behalf of or as an agent of a borrower of a loan for which flood insurance is required shall be considered to have complied with the regulations issued under subsection (b) of this section.

Id. § 4012a(f)(6).

    B.   Facts

On June 29, 2007, Defendant loaned Plaintiff $241,500. Compl. ¶¶ 4-5, ECF No. 1. The loan was secured by a mortgage on real property and improvements located at 1019 Kimberton Road, West Pikeland Township, Pennsylvania ("the Property").[3] Id. By the time of closing on June 27, 2007, Defendant obtained a flood zone certification that the Property was not located within a SFHA. Id. ¶ 8. Plaintiff commenced making monthly payments on the loan. Id. ¶ 9.

On August 9, 2007, Defendant obtained a second flood zone certification that the Property was located in a SFHA. Id. ¶¶ 11-12. Accordingly, Defendant advised Plaintiff that the Property was in a SFHA and that Plaintiff must obtain flood insurance on the Property. Id. ¶ 13.

---

[3]    Plaintiff attached a Note memorializing the loan and the Mortgage to the Complaint. Compl. Ex. A.

Defendant acquired flood insurance on the Property and assessed the premiums paid to the monthly loan payments. Id. ¶¶ 14, 36. Plaintiff refused to pay the additional flood insurance premiums because he believed the second flood zone certification to be in error.[4] Id. ¶ 15.

In 2008, however, Defendant reported to certain credit reporting agencies that Plaintiff was in default or late in making payments on the loan. Id. ¶ 18. And on August 2, 2010, Defendant initiated a mortgage foreclosure action against Plaintiff because the loan was in default. Id. ¶ 19-20. Both actions were the result of the additional insurance premium charges Defendant assessed, which, Plaintiff contends, were erroneous. Id. ¶ 17-34. Plaintiff continued to make monthly payments on the loan less any premiums assessed for the flood insurance policy.[5] Id. ¶ 36.

Plaintiff suffered damages in the form of costs for obtaining a surveyor and providing information to Defendant that the Property was not in a SFHA, unreimbursed and improperly

---

[4]     Defendant advised Plaintiff that, to correct the alleged error regarding the second flood zone certification, Plaintiff must secure a surveyor to issue a letter of map amendment ("LOMA") to the Federal Emergency Management Agency ("FEMA"). Compl. ¶ 88. Plaintiff secured a surveyor, who issued a report on December 21, 2009. Id. ¶ 89.

[5]     To resolve the foreclosure, Plaintiff applied for and received a loan modification, which was approved in June 2011. Compl. ¶ 92.

assessed flood insurance premiums, attorney's fees and costs, and lost profits relating to Plaintiff's business, Tom Oates Automotive Center, arising from Plaintiff's inability to obtain financing because of alleged inaccuracies in Plaintiff's credit report. Id. ¶¶ 32-37.

## II.  PROCEDURAL HISTORY

On August 2, 2011, Plaintiff commenced this action against Defendant in the Court of Common Pleas of Chester County, Pennsylvania. Plaintiff alleges the following six counts: violation of the FCRA (Count I); violation of the FDCPA (Count II); libel (Count III); negligence (Count IV); breach of contract (Count V); and breach of warranty of good faith (Count VI).

On March 6, 2012, Defendant removed to the U.S. District Court for the Eastern District of Pennsylvania invoking the Court's federal-question and diversity jurisdiction.[6] See 28 U.S.C. §§ 1331, 1332(a), 1441(b).

On March 13, 2012, Defendant moved to dismiss the Complaint in its entirety. Mot. to Dismiss 1, ECF No. 5. Plaintiff responded. Pl.'s Resp. 1, ECF No. 6. On July 27, 2012,

---

[6]      Plaintiff is an individual and citizen of Pennsylvania. Compl. ¶ 2. Defendant is a corporation and citizen of South Carolina, with a principal place of business in South Carolina. Id. ¶ 3.

the Court held a hearing on the Motion. The Motion is now ripe for disposition.

### III. LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks omitted). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for

relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

IV.  **DISCUSSION**

Defendant moves to dismiss all claims in the Complaint for failure to state a claim upon which relief can be granted. Defendant moves to dismiss Plaintiff's demand for lost profits for lack of jurisdiction. For the reasons provided, the Court will grant in part and deny in part the Motion to Dismiss.

A.  Flood Disaster Protection Act Preemption

First, Defendant argues that the FDPA preempts Plaintiff's state and federal claims. The Third Circuit has not

8

addressed whether there is an express or implied right of action for violations of the flood zone determination and notification requirements of the FDPA. Congress did not expressly confer a private right of action in the FDPA. And courts that have considered the issue have concluded that no private right of action exists. <u>See, e.g.</u>, <u>Lukosus v. First Tenn. Bank Nat'l Ass'n</u>, 89 F. App'x 412, 412 (4th Cir. 2004) (per curiam).

None of Plaintiff's claims is for a violation of the FDPA; therefore, whether FDPA confers a private right of action is not principally at issue here. Rather, Defendant contends that Plaintiff cannot bring a state cause of action based on a violation of the FDPA. The Pennsylvania courts have not ruled on this issue. And federal and state courts generally refuse to allow a private common law cause of action based on violations of the FDPA. <u>See</u> <u>Ford v. First Am. Flood Data Servs.</u>, No. 06-453, 2006 WL 2921432, at *3 (M.D.N.C. Oct. 11, 2006) (reporting cases). Plaintiff has not pointed to a single case in which a court has allowed a common law claim based on a violation of the FDPA. Rather, Plaintiff attempts to distinguish the authorities to which Defendant cites. And Plaintiff makes no argument in attempt to predict whether Pennsylvania would allow a cause of action based on a violation of the FDPA. Therefore, the Court

will dismiss Plaintiff's common law claims to the extent they are based on violations of the FDPA.[7]

Defendant further argues that Plaintiff cannot bring a claim under the FCRA for a violation of the FDPA. As explained in more detail below, Plaintiff claims Defendant violated the FCRA by failing to investigate allegedly inaccurate information furnished to certain credit reporting agencies. Plaintiff contends Defendant failed to investigate a dispute Plaintiff made in accordance with the FCRA. Plaintiff alleges, and Defendant's agent allegedly agreed, that certain reported credit information relating to payment on the Note and Mortgage is inaccurate because Defendant improperly assessed flood insurance coverage premiums against Plaintiff that Plaintiff refused to pay, thereby causing him to default on the Note. Although Plaintiff's FCRA claim relates to the FDPA, Plaintiff's FCRA claim is not based on a violation of the FDPA.[8] Therefore, the Court will deny the Motion with respect to Plaintiff's FCRA claim.

---

[7]	To the extent Plaintiff's libel and negligence claims are based on Defendant's alleged failure to investigate allegedly inaccurate information Defendant furnished to credit reporting agencies and to the extent Plaintiff's breach-of-contract claim is based on the breach of the terms of the Note and Mortgage, the Court will go on to consider Defendant's remaining arguments for dismissal.

[8]	In other words, Plaintiff does not, for example, claim Defendant breached a duty owed by virtue of the FDPA.

B.    Count I: Fair Credit Reporting Act

Plaintiff alleges Defendant willfully and negligently violated the FCRA by failing to investigate allegedly inaccurate information and reporting allegedly inaccurate information to credit reporting agencies. The FCRA "protect[s] consumers from the transmission of inaccurate information about them, and . . . establish[es] credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortex v. Trans Union, L.L.C., 617 F.3d 688, 706 (3d Cir. 2010) (internal quotation marks omitted). Among the duties imposed on furnishers of information to consumer reporting agencies, the FCRA requires a furnisher of information, in certain circumstances, to investigate the completeness and accuracy of information furnished. See 15 U.S.C. § 1681s-2(b) (2006). The FCRA provides a private cause of action for the willful and negligent violations of the FCRA. See id. §§ 1681n, 1681o; see also Simmsparris v. Countrywide Fin. Corp., 652 F.3d 355, 358 (3d Cir. 2011) ("This leaves 15 U.S.C. § 1681s-2(b) as the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."). And a furnisher is only liable for failing to conduct a reasonable investigation after a consumer alerts the credit reporting agency of disputed information and the agency informs the furnisher of the dispute. See 15 U.S.C. §

11

1681i(a)(2) (2006); see also Simmsparris, 652 F.3d at 359 ("[A] private citizen wishing to bring an action against a furnisher must first file a dispute with the consumer reporting agency, which then must notify the furnisher of information that a dispute exists. Only after this notification can the furnisher face any liability to a private individual.").

Defendant moves to dismiss because Plaintiff failed to allege he filed a dispute with a credit reporting agency and that the agency notified Defendant of the dispute. This is not a fair reading of the Complaint. In fact, Plaintiff alleges that on August 22, 2009, he filed a dispute with Defendant and credit reporting agencies. Compl. ¶ 26. Plaintiff further alleges that "[u]pon information and belief, the Consumer Reporting Agencies initiated inquiry into [Plaintiff's] credit history by informing [Defendant] that [Plaintiff] disputed the accuracy of the report that he was delinquent on his Loan payments." Id. ¶ 27. Furthermore, Plaintiff alleges that the consumer reporting agencies notified Defendant of the dispute and that Defendant failed to reasonably investigate the dispute. Id. ¶¶ 46-47. Thus, Plaintiff alleged sufficient facts that he followed FCRA notice procedures.

Defendant further argues that Plaintiff fails to allege facts to support a claim that Defendant failed to investigate his dispute but instead "merely alleges his theory

and the legal conclusion that [Defendant] 'recklessly disregarded its obligations to investigate disputed information under FCRA.'" Mem. in Supp. of Mot. to Dismiss 13 (quoting Compl. ¶ 51). This also is not a fair reading of the Complaint. Plaintiff alleges that he notified Defendant of the allegedly erroneous report in December 2009, that Defendant's representative "verbally advised" him that it would make the requested corrections, that Defendant continued to make inaccurate reports even after reversal of the second SFHA determination, and that Defendant failed to make any corrections at least until August 2011.[9] Compl. ¶¶ 26-29, 34. Therefore, Plaintiff alleged facts that support a facially plausible claim under the FCRA.

Finally, Defendant argues that any investigation it would have taken into the allegedly inaccurate reports would have been futile because Plaintiff failed to seek a reversal of the second SFHA determination for two years. This argument is immaterial because Plaintiff alleges Defendant continued to violate the FCRA by furnishing inaccurate reports after reversal

---

[9]     In response, Plaintiff asserts that he is in possession of a letter from Defendant dated December 15, 2009, that purportedly acknowledges Plaintiff's property does not require flood insurance coverage. Pl.'s Resp. 11 n.3. Plaintiff did not allege possession of the letter in the Complaint nor did he attach it to the Complaint. Therefore, the Court will not consider it at this stage in the proceedings. See Jordan, 20 F.3d at 1261.

of the second SFHA determination in December 2009. Therefore, the Court will deny the Motion with respect to Count I.

###### C.    Count II: Fair Debt Collection Practices Act

Defendant moves to dismiss Count II because Plaintiff fails to allege facts that would demonstrate Defendant is a "debt collector" under the FDCPA. See 15 U.S.C. § 1692k(a) (2006) (establishing civil liability against debt collector for violation of FDCPA). Plaintiff agrees that Defendant is not a debt collector as defined under the FDCPA and withdraws Count II. Pl.'s Resp. 18-19. Therefore, the Court will grant the Motion with respect to Count II.

###### D.    Counts III & IV: Libel and Negligence

Defendant moves to dismiss Plaintiff's libel and negligence claims because the FCRA preempts those claims. The FCRA establishes civil liability for certain violations of the FCRA. See, e.g., 15 U.S.C. § 1681n (establishing civil liability for willful noncompliance with FCRA); id. § 1681o (establishing civil liability for negligent noncompliance with FCRA). The FCRA also limits when a plaintiff may bring certain state law claims:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes

information to a consumer reporting agency, based on
information disclosed pursuant to section 1681g,
1681h, or 1681m of this title, or based on information
disclosed by a user of a consumer report to or for a
consumer against whom the user has taken adverse
action, based in whole or in part on the report except
as to false information furnished with malice or
willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (2006).

Defendant argues Plaintiff fails to allege facts that, if proven, would establish Defendant acted with malice or willful intent to injure, and, therefore, the FCRA preempts the libel and negligence claims.

With respect to his libel claim, Plaintiff responds that the FCRA does not preempt the claim because Plaintiff alleged a facially plausible claim that Defendant acted with malice or willful intent to injure Plaintiff. Specifically, Plaintiff alleges Defendant was aware since December 2009 of the allegedly inaccurate credit reports but, nevertheless, continued to make inaccurate reports. Plaintiff alleges Defendant's personnel acknowledged the mistake but failed to correct it.

"Malice . . . may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiff alleges Defendant intentionally reported inaccurate information despite its knowledge that the Property is not in a SFHA and, as such, flood insurance coverage is not required. Therefore, the Court will deny the Motion to Dismiss with respect to Count III. See Haynes v. Navy Fed. Credit Union,

825 F. Supp. 2d 285, 297-98 (D.D.C. 2011) (finding defamation claim not preempted by FCRA when plaintiff alleged, inter alia, defendant knew delinquent mortgage payment reports were false).

With respect to his negligence claim under Count IV, Plaintiff responds that the claim survives because § 1681o provides liability for the negligent violation of the FCRA.[10] Pl.'s Resp. 15-16. Although Plaintiff is correct, he stated a claim for the negligent violation of the FCRA in Count I. Compl. ¶¶ 42, 52. Therefore, the Court will grant the Motion with respect to Count IV.[11]

E.    Count V: Breach of Contract

Defendant moves to dismiss Plaintiff's breach-of-contract claim because Plaintiff did not identify a breach of

---

[10]     Plaintiff does not argue that his negligence claim survives FCRA preemption, as he did with regard to his libel claim, because Defendant acted with malice or willful intent to injure. Therefore, the Court does not reach Defendant's argument that the Court must dismiss Plaintiff's negligence claim because, by definition, a plaintiff cannot allege "willful negligence." Mem. in Supp. of Mot. to Dismiss 15 (citing Shannon v. Equifax Info. Servs., 764 F. Supp. 2d 714, 728 (E.D. Pa. 2011) ("By definition, a plaintiff cannot allege willful negligence. Therefore, the only negligence action that Plaintiff can pursue is a negligence action under the FCRA.")).

[11]     Defendant also moves to dismiss Count IV under the gist-of-the-action doctrine and the economic-loss doctrine because Plaintiff's claim is predicated on the terms of the Note and Mortgage, and, therefore, Defendant's duties are grounded in contract. The Court need not reach these arguments because the FCRA preempts Plaintiff's negligence claim.

any terms of the Mortgage. Under Pennsylvania law, a plaintiff
asserting a claim for the breach of contract must establish "(1)
the existence of a contract, including its essential terms, (2)
a breach of a duty imposed by the contract, and (3) resultant
damages." Pennsy Supply, Inc. v. Am. Ash Recycling Corp., 895
A.2d 595, 600 (Pa. Super. Ct. 2006) (internal quotation marks
omitted). Defendant argues that the Mortgage does not require it
to challenge or investigate the SFHA determination, that
pursuant to the Mortgage Defendant may require Plaintiff to
escrow flood insurance premiums, that Plaintiff agreed to
maintain flood insurance on the Property, and that Defendant may
institute foreclosure proceedings.

Plaintiff responds that dismissal of the breach-of-
contract claim would be improper at this stage in the
proceedings. Plaintiff notes that Defendant's assessment of
"sham" flood insurance premiums violates the term of the
Mortgage to "estimate the amount of Funds due on the basis of
current data and reasonable estimates of expenditures of future
Escrow Items or otherwise in accordance with Applicable Law."
Mortgage ¶ 3. Plaintiff argues that Defendant's assessment of
premiums after Plaintiff secured private flood insurance forced
Plaintiff to pay twice for flood insurance coverage, in
violation of the Mortgage. Furthermore, Plaintiff asserts
Defendant instituted foreclosure proceedings based on the

failure to pay premiums that Defendant allegedly admits were unnecessary. Plaintiff contends that Defendant's actions constitute a breach of the implied covenant of good faith and fair dealing.

At this stage in the proceedings, whether Defendant breached either the Note or Mortgage is unclear. Plaintiff has at least stated a facially plausible claim for breach of contract. See Gelman, 583 F.3d at 190. Therefore, the Court will deny the Motion with respect to Count V.

F.    Count VI: Breach of Warranty

Plaintiff alleges "[Defendant] warrants its contracts to be fair, reasonable, and negotiated in good faith." Compl. ¶ 101. Defendant moves to dismiss Plaintiff's breach-of-warranty claim because it is not a cognizable claim. Indeed, Pennsylvania does not recognize an independent cause of action for the breach of the implied duty of good faith and fair dealing. See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91-92 (3d Cir. 2000) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of action." (internal quotation marks omitted)).

Plaintiff agrees that Pennsylvania does not recognize an independent claim for breach of the implied covenant of good

faith and fair dealing. Rather, Plaintiff argues Defendant breached "express warranties" in the Mortgage. Pl.'s Resp. 25. A claim for breach of "express warranties" is a claim for breach of contract. The Court may consider the implied duty of good faith in interpreting the terms of the Note and Mortgage. See Northview Motors, 227 F.3d at 91 ("Courts have utilized the good faith duty as an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action, but that duty is not divorced from the specific clauses of the contract and cannot be used to override an express contractual term."). Therefore, the Court will grant the Motion with respect to Count VI.

>        G.    Demand for Lost Profits

Plaintiff demands lost profits relating to Tom Oates Automotive Center caused by allegedly inaccurate credit reports. Plaintiff alleges he is owner and sole proprietor of Tom Oates Automotive Center. Compl. ¶ 23. Defendant attached a certificate of incorporation for an entity named, "Tom Oates Chevrolet, Inc.," and documents indicating Tom Oates Chevrolet, Inc., owns the fictitious name, "Tom Oates Automotive." See Mot. to Dismiss Ex. D. Defendant argues that the corporate entity suffered the harm alleged, not Plaintiff, and, therefore, Plaintiff lacks standing to demand damages for lost profits. See Sierra Club v.

Morton, 405 U.S. 727, 734-35 (1972) (holding Article III requires that plaintiff personally suffered injury); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 348 (3d Cir. 2001) (distinguishing injury to corporate body from injury to shareholder under Pennsylvania law).

Plaintiff admits that he is not the sole proprietor of "Tom Oates Automotive," but is, in fact, the president and sole shareholder of Tom Oates Chevrolet, Inc. Pl.'s Resp. 27 Accordingly, Plaintiff requests leave to amend the Complaint to drop the demand for lost profits and, instead, add a demand for lost wages and bonuses. Id. Therefore, the Court will grant Defendant's Motion with respect to Plaintiff's demand for lost profits with leave to amend the Complaint with respect to this demand within seven days of entry of this Memorandum and accompanying Order.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Motion to Dismiss. The Court will grant the Motion with respect to Counts II (FDCPA), IV (negligence), and VI (warranty of good faith), and to the extent Plaintiff's common law claims are based on alleged violations of the FDPA. The Court will dismiss those counts. Furthermore, the Court will grant the Motion with respect to Plaintiff's demand

for lost profits and will dismiss Plaintiff's demand with leave
to amend the Complaint within seven days of entry of this
Memorandum and accompanying Order. The Court will deny the
Motion with respect to Counts I (FCRA), III (libel), and V
(breach of contract). An appropriate order will follow.